JOHN F. HUGHES, SR., ET AL., APPELLANTS, VS. THOMAS HANNAH, ET AL., APPELLEES.

1. The right of trial by jury in proceedings according to the course of the common law, as shown and practiced at the time of the organization of our State government, and continued or guaranteed by the third section of the Bill of Rights of the Constitu-

tion of 1885, has reference to legal rights and contentions, and not to equitable demands, enforced in a court of chancery, whether pertaining to the original or concurrent jurisdiction of that court.

2. The Legislature can modify or expand the powers of the court of chancery as to its entire field of recognized jurisdiction; provided such modification or expansion does not impair rights guaranteed by the Constitution.

.3. The Legislature may create new rights unknown to the common law, and make provision for their determination in the absence of a jury, without violating the constitutional guarantee of trial by jury, but the mere change in the form of an action will not authorize the submission of common law rights to a court in which no provision is made to secure a jury trial.

4. Actions for the recovery of real property, including damages for its detention, have always been at law; and courts of chancery have refused to entertain suits for such purpose on the ground of a want of jurisdiction. This has been the rule where there was no equitable element in the case, and the court of chancery had no right, by virtue of its general or concurrent jurisdiction, to assume control of the case in any aspect.

.5. The act of 1889, chapter 3884, entitled "An act to extend the powers of the courts of chancery in this State," should be enforced so far as it can be done, consistent with the limitations of the Constitution.

.6. A bill was filed by four complainants against twenty-seven defendants, the complainants claiming to own certain described lands by inheritance from heirs of a common ancestor; two of the complainants claimed to inherit an undivided half interest in the land from one of said heirs, and the other complainants asserted ownership of the other undivided interest by inheritance from the other heir. The bill states that a deed made in alleged pursuance of a tax sale of the lands for non-payment of taxes was executed and delivered by the county clerk to one of the defendants, who asserted title under the same to a portion of said lands, and that he had made many deeds to many portions of the lands to other defendants named, and that the defendants holding by numerous mesne conveyances from the grantee in the tax deed, or his grantees, assert title under said deed to portions of the lands and were in possession thereof, and refused to surrender the same to complainants;

that complainants' title to the lands was denied by defendants who claim that their title under the tax deed was good, but that they had in fact no good title to or right of possession of said lands; and the tax deed is alleged to be void on various grounds stated: *Held*, (1) That under the former adjudications of this court, independent of the act of 1889, chapter 3884, no ground of equitable interference was shown; (2) that defendants being in possession of different portions of the lands, asserting title under an independent source from that of complainants, had a constitutional right to have their claims tried by a jury, and that the provisions of the act of 1889 could not deprive them of this right.

Appeal from the Circuit Court for Washington county.

### STATEMENT.

In November, 1889, appellants filed a bill against appellees twenty-seven in number, and as amended it alleges in substance as follows: In 1835, one James Watson entered lots one (1) two (2) and three (3) in section one (1), township four (4), range fifteen (15), south and west situated in Washington county, Florida, containing 245 4–100 acres, for which he received a patent in April, 1837. That Watson died intestate leaving a widow, Caroline Watson, and two children, Fanny and Rebecca, all of whom have died; that complainant John F. Hughes, Sr., married Rebecca and they had but one child, complainant John F. Hughes, Jr., and these complainants were the owners in fee of Rebecca's share, to-wit: One undivided half interest in said land, and were entitled to the possession of the same.

Fanny Watson married one W. B. Wynn who has died and they left an issue only the complainants William B. Wynn and Margaret Frances Tucker, who are

the owners in fee of the share of Fanny Watson, to-wit: One undivided one-half of said land, and were entitled to the possession thereof.

That in October, 1875, the county clerk of Washington county executed and delivered to Thomas Hannah a deed to said real estate, together with other real estate, said deed having been made by said clerk in alleged pursuance of the tax sale of lands held in said county on the 3d day of August, 1874, for non-payment of taxes alleged to be assessed and due thereon to the State of Florida and county of Washington, a copy of said deed being attached and made a part of the bill. That said tax deed was and is invalid and passed no title to said land to Thomas Hannah because of certain defects particularly specified and which are not here stated, it being sufficient to state that the defects alleged, if true, are sufficient to invalidate the tax deed. Further that Thomas Hannah himself asserts title under said tax deed to portions of said tract of land and had made many deeds to many portions of the said tract, and that the persons hereinafter named, holding by numerous mesne conveyances from Hannah or his grantees, assert title under said tax deed to portions of said tract and were in possession of portions thereof and claim said title to be good, and that the title of complainants to said tract was not good, and refuse to deliver possession of the said portions held by them to complainants; that said persons have no title to or right of possession of the said portions of land by virtue of said tax deed or otherwise. That complainants are informed that the portions so claimed are described respectively, as follows. (Here the names of certain of the defendants and lots, or portions of the described tract of land, al-

leged to be possed and claimed by them, are set out in detail, and as to certain other defendants named, including Hannah, it is alleged that complainants were not informed of the exact bounds of the portions of said tract claimed or held by them, and discovery as to such matters was prayed in the form of specific interrogatories).

The prayer of the bill is that the said tax deed to Thomas Hannah be declared to be null and inoperative to convey any title to him, and to be a cloud upon the title of complainants, and that it be delivered up and cancelled; that complainants be decreed to have title to and right of possession of the respective pieces of land in said tract claimed by defendants respectively, and that they have no title thereto, and it be decreed that they deliver up possession of said respective portions held by them to complainants, and in default thereof that the court put complainants in possession thereof.

The bill was demurred to on the following grounds: 1. There is no equity in the bill. 2. Complainants have a plain, adequate and complete remedy at law. 3. The bill is vague, indefinite and uncertain. 4. The bill does not allege that either the complainants or those through whom they claim were seized or possessed of the land within seven years before the commencement of this suit, or that title had been derived from the State of Florida, or the United States, within that period. One of the defendants added the further ground that the bill was multifarious. This demurrer was overruled and answers filed, and after testimony taken the bill was dismissed on final hearing.

24

Complainants appealed, and appellees insist that the demurrer was improperly overruled.

A further statement of the case is unnecessary in view of the conclusion reached.

The other facts in the case are stated in the opinion of the court.

*William Fisher* and *Blount & Blount*, for Appellants.

*D. L. McKinnon*, for Appellees.

MABRY, J.:

A demurrer to the original bill filed in this case was overruled, and the defendants filed an amended bill, to which defendants demurred. After the demurrer to the amended bill was overruled answers were filed, and on final hearing, upon the pleadings and proofs, the bill was dismissed. An appeal was entered from the order overruling the demurrer to the original bill, but as the case proceeded in the lower court upon the amended bill we dispose of it here under such bill without reference to the original bill and the demurrer thereto.

The bill was filed after the passage of the act of 1889, chapter 3884, and, as is evident, predicated complainants' right to relief upon that act. Under the demurrer to the bill it is insisted that the court of chancery had no jurisdiction of the case independent of the act of 1889, the defendants being in possession of the land, holding adversely under claim of title, and the remedy at law being adequate, and that it was not competent for the Legislature to confer jurisdiction upon a court of equity and thereby deprive de-

fendants of the right of trial by jury guaranteed to them by the third section of the bill of rights in the Constitution providing that "the right of trial by jury shall be secured to all and remain inviolate forever." This provision was designed to preserve and guarantee the right of trial by jury in proceedings according to the course of the common law as known and practiced at the time of the adoption of the Constitution. Substantially similar provisions have existed in all the revisions of our Constitution since the organization of the State government, and it has been generally recognized that all causes of action, claims and demands which were entitled to be tried by jury according to the course of the common law of England, as existing at the time of the establishment of our government, are included in the constitutional guaranty of trial by jury, and must be preserved until otherwise provided by the Constitution itself. The qualification that the jury trial contemplated must be according to the course of the common law, confines it to legal rights and contentions, and it does not extend to equitable demands enforced in the courts of chancery. It does not include all contentions even in the courts of common law, as many of them were disposed of without the interposition of a jury, but it does not embrace all causes of action, claims and demands which, according to the course of procedure at law, were entitled to be tried by jury at the time of the organization of our government. This is settled law as recognized by this court. Blanchard vs. Raines' Executrix, 20 Fla. 467; Buckman vs. State ex rel. 34 Fla. 48, 15 South. Rep. 697; Wiggins & Johnson vs. Williams, 36 Fla. 637, 18 South. Rep. 859. The guaranty of trial by jury as stated has no reference to equitable causes coming

within the proper sphere of the court of chancery,. whether pertaining to the original or concurrent jurisdiction of that court. We said in Wiggins & Johnson vs. Williams, *supra*, it may be safely stated that in all those cases in which a court of equity prior to the adoption of the Constitution guaranteeing a trial by jury, and by virtue of its general or concurrent jurisdiction for one purpose, had proceeded to a complete adjudication of the entire case, even to the settlement of legal rights which otherwise would be beyond its powers, it can not be successfully claimed that the guaranty of trial by jury exists as to the legal right. It was also conceded in that case that in reference to the entire subject-matter of recognized equitable jurisdiction the Legislature could modify or expand the powers of the court as to such matters, but it was decided that this could not be done to the extent of depriving a party of a right guaranteed to him. by the Constitution. It is common knowledge that the powers of the court of chancery have been greatly expanded, not only by legislative enactment, but by the practice of the court. Its professed object in the beginning was to administer justice where the remedies of the common law were inadequate, and the great usefulness of the court consists in the application of its principles to the growth and development of human transactions. While this is true, it can not. be admitted, we think, that, either by the growth and expansion of the courts' powers, or by legislation, the guaranties of the Constitution can be undermined and swept away. The Constitution of the United States, as amended, provides that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be pre-

Hughes, Sr., et al. v. Hannah et al.—Opinion of Court.

served, and the decisions of the Supreme Court con-
struing this provision sustain the view we take of the
provision under consideration of our Constitution.
While State Legislatures have no power to prescribe
the forms and modes of proceeding in the courts of
the United States, yet if the remedy prescribed by a
State is substantially consistent with the ordinary
modes of proceeding on the chancery side of the Fed-
eral Courts, it will be enforced by the latter courts in
the same form as in the State courts, provided the
guaranty of the Constitution of the United States is
not impaired, or Federal Statutes violated.

A statute of Iowa provided, in effect, that an action
to determine and quiet the title to real estate could be
brought by one claiming title, whether in or out of
possession, against any person claiming title thereto,
whether in or out of possession, and a bill was filed
under this statute in the Federal Court against one in
possession holding adversely.    The court held, in the
case of Whitehead vs. Shattuck, 138 U. S. 146, 11
Sup. Ct. Rep. 276, that the remedy should be sought
at law where both parties have a constitutional right
to call for a jury, and that the statute of Iowa could
not enlarge the equity jurisdiction of the Federal
Courts in the State so as to give them jurisdiction over
a suit in equity in a case where a plain, adequate and
complete remedy existed at law.

A statute in Mississippi was passed giving chancery
courts jurisdiction of bills filed by creditors who have
not obtained judgments at law, or, having judgments,
have not had executions returned unsatisfied, to set
aside fraudulent conveyances of property to hinder
and delay creditors, but the Federal Court refused the
jurisdiction under the statute, and maintained the

right of the defendants to a trial by jury ou the claims. of complainants.   Scott vs. Neely, 140 U. S. 106, 11 Sup. Ct. Rep. 712.   It was conceded by the court that new equitable rights created by a State could be enforced in the Federal Courts, but subject to the qualification that such enforcement does not impair any right conferred, or conflict with any prohibition imposed by the Constitution or laws of the United States. The case of Cates vs. Allen, 149 U. S. 451, 13 Sup. Ct. Rep. 883, announces the same doctrine, and these cases. distinguish the former decisions in that court apparently holding a different view, and especially the case of Holland vs. Challen, 110 U. S. 15, 3 Sup. Ct. Rep. 495.   The decision in Tabor vs. Cook, 15 Mich. 322, is to the same effect, where it was contended that a statute of Michigan permitting the claimant under a tax deed to file a bill to quiet his title, authorized the bill to be filed against one in possession of the land.   It was said:   "Whatever proceeding the Legislature authorizes for the determination of adverse claims, the right of the party in possession to a jury trial must be kept in view, and some mode pointed out by which he can demand it.   In civil cases at law, including ejectment suits, provision is made by statute and rule whereby either party may obtain a jury; but there is no such provision for cases in chancery, and it is only in special cases, where the court desires the verdict of a jury for its own guidance, that issues in chancery can go before a jury at all.   A defendant in chancery, therefore, can not waive a jury by failing to demand it, because no mode is provided by which any such demand can be made; and a statute which should authorize a bill in the nature of an ejectment bill, without at the same time providing some means by which.

a jury could be had at the option of the defendant. would be in palpable disregard of the provisions of the Constitution which we have quoted."

The principles of law which we have stated are correct, in our judgment, and must control in the construction of the statute of 1889. The first section of the act—the one involved in this suit—provides that any person claiming to own a tract or parcel of land, or two or more persons claiming to own the same tract or parcel of land, or portions thereof, under a common title, may enter suit in chancery against all persons more than one occupying or claiming title to the said tract, or portions thereof, adversely to the complainant or complainants, whether the defendants claim or hold under a common title or not, and in such suit the court shall determine the title of complainant or complainants, and each of them, as against the defendants, and each of them, and shall make a decree quieting the title and awarding possession to complainant or complainants entitled thereto, and may also award injunctions, appoint receivers and make orders as to costs. This statutory provision was introduced for the first time into our system in 1889, and up to this time it has not come directly before this court for interpretation. The second section of the same act was considered in the case of Wiggins & Johnson vs. Williams, *supra*.

This court has repeatedly recognized the rule that actions for the recovery of real property, including damages for its wrongful detention, has always been at law. Cavedo vs. Billings, 16 Fla. 261; Freeman vs. Timanus, 12 Fla. 393; Burns vs. Sanderson, 13 Fla. 381. In one case (Cavedo vs. Billings) it is said: "The courts of chancery have uniformly refused to en-

tertain suits for recovering the possession of real prop-
erty under a legal title, on account of the want of ju-
risdiction." This, of course, must be understood to
be the rule where there is no equitable element in the
case, and the court of chancery has no right, by virtue
of its general or concurrent jurisdiction, to assume
control of the case in any aspect. To give full force
to the provision of the statute quoted in all the cases
provided for by it, it is evident, in some cases that
there would be a palpable invasion of the right of trial
by jury as it existed according to the course of the
common law when our constitutional provision guar-
anteeing the right of jury trial first came into existence.
To illustrate, the statute authorizes a person claiming
to own real property to file a bill against two in pos-
session holding adversely to complainant under claim
of title whether under common title or not, and have
the title determined and possession awarded, and this
without reference to any supervening equity, or the
right of defendants to a trial at law as it had always
existed. We can not sanction any legislation that
would deprive defendants of a right of trial by jury in
such a case. We recognize the duty devolving upon
this court to carry out the will of the Legislature so
far as it can be done consistent with the limitations of
the Constitution, and the material inquiry in this case
is, can the present bill be sustained? It is evident it
can not be sustained on the ground of removing the
alleged void tax deed as a cloud upon complainants'
title. Before such a bill will lie, complainant must be
in possession, unless the land is alleged and proven to
be wild and unoccupied. Our decisions are positive
on this point, and the reason for declining jurisdiction
in equity when the defendant is in possession is that

the remedy at law is clear and adequate. Sloan vs. Sloan, 25 Fla. 53, 5 South. Rep. 603; Haworth vs. Norris, 28 Fla. 763, 10 South. Rep. 18; Patton vs. Crumpler, 29 Fla. 573, 11 South. Rep. 225; Graham vs. Florida Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796. The present bill not only fails to allege the jurisdictional facts as to complainant's possession, but expressly states that defendants were in actual possession holding under claim of title.

It is contended for appellants that the bill can be sustained on the ground of avoiding a multiplicity of suits, and that the act can be upheld upon the view that in its essentials it authorizes a bill in the nature of a bill of peace, in that it is for the prevention of litigation and the quieting of titles by one suit, and that the elimination of some of the former requisites of bills of this nature does not render it other than equitable in its nature. The act should be sustained if it can be done without impairing rights guaranteed by the Constitution, but if the elimination of any of the former requisites of bills of peace, or any other bills coming within the recognized jurisdiction of chancery, will have the effect to deprive parties of a right of trial by jury as was known and recognized when the Constitution was framed, the act to that extent must give way to the higher law.

The prevention of a multiplicity of suits was a recognized head of equity jurisdiction when our Constitution was framed in 1838, and it has been greatly expanded since that time by the courts of this country. 1 Pomeroy's Eq. Jur., sec. 243 *et seq.* It was, however, never the rule in equity to assume jurisdiction simply because a complainant had numerous suits at law to institute. We are fully in accord with the ad-

vanced doctrine of the court of chancery and so far as we can, consistent with our own precedents and the limitations of the Constitution, are willing to sanction the approved and prevailing view. In 1853, this court decided the case of Doggett vs. Hart, reported in 5 Fla. 215, and there held that the court of equity would not entertain jurisdiction on the ground of preventing a multiplicity of suits, merely because the complainant had a multitude of suits to bring depending upon the same question or the same title, but would entertain such jurisdiction where the bill was in the nature of a bill of peace, as where the party was in possession and was threatened with numerous actions, and in cases where a court of equity having entertained jurisdiction upon a clear ground of equity, as for discovery, will also give relief, consequent upon discovery. In that case the court denied the jurisdiction of equity on a state of facts, as to a multiplicity of suits, not materially different from those stated by the bill now before us. Mrs. Doggett claimed to own the land involved in the suit and she alleged that Hart and the other defendants, claiming under conveyances from him, were in possession of respective portions of the land, and it was contended that the bill could be sustained on the ground of avoiding a multiplicity of suits.

In Caro vs. Pensacola City Company, 19 Fla. 766, it was held that where the right to the possession of and title to land is established by an action at law, a court of equity has jurisdiction to declare the right and to protect it by a perpetual injunction, and threatened irreparable injury was not a necessary element of the equity. It was also there decided that where there is a large number of persons claiming possession and ti-

tle from the same source as against one or more persons claiming title from the same source, equity will interfere in behalf of those in possession to declare the right and enforce it by perpetual injunction, and this without the prior establishment of the right at law, and without proof of threatened irreparable injury. Whatever conflict there may be between the cases in other respects, there is none as to the requirement of possession on the part of complainants in order to maintain the bill. In the present case it can not be claimed that there is any inherent equity or ground for equitable interference other than that complainants might have suits of ejectment against many persons, involving, perhaps, one question common to them all. It is evident from the allegations of the bill that complainants and defendants do not claim from the same source of title. Complainants claim by inheritance from Rebecca and Fanny Watson, who inherited from their father, James Watson, and the defendants claim, as alleged by the bill, under numerous mesne conveyances from Hannah, who claimed title under a tax deed. The tax title is an independent source of title to that alleged by complainants, and it is not made to appear by definite averments in the bill that the rights of all the defendants under their respective holdings are dependent upon the same state of facts or questions of law. Under our decisions jurisdiction in chancery is not shown independent of the statute, and, in our judgment, the defendants had a clear right at law as it existed at the time of the adoption of the Constitution, to have the question of their title and possession tried by a jury, and it is not competent for the Legislature to deprive them of this right. The remedy for the recovery of real property, including

mesne profits, was by ejectment, in which a jury was demandable of right, and this right as it existed at the time stated must be preserved.   Plimpton vs. Town of Somerset, 33 Vt. 283.   It is conceded that new rights unknown to the common law may be created, and provision made for their determination in the absence of a jury without violating the provision of the Constitution mentioned, but the mere change in the form of an action will not authorize the submission of common law rights to a court in which no provision is made to secure a trial by jury.   The act of 1889 can not, in our judgment, be sustained on the theory that it creates such new rights as to authorize the determination of the right of title and possession to land without a jury.

The court below should have sustained the demurrer to the amended bill, and the cause will be remanded to the Circuit Court with directions that the demurrer be sustained and the bill dismissed.