# SUPREME COURT OF THE STATE OF GEORGIA,

## AT AMERICUS,

### JULY TERM, 1849.

7   49
h112 882

7   49
e122 352

No. 6.—CELIA HATCHER, plaintiff in error, *vs.* JAMES HAMPTON, defendant.

[1.] In applications to a Court of Equity, for an injunction to restrain a *trespass*, the bill must allege peculiar circumstances, to show that the injury is irreparable and the Common Law remedy insufficient.

[2.] The mere allegation that the defendant is felling the timber of the complainant, is not enough, without further averment as to some peculiar value of the timber for some particular purpose.

[3.] Chancery will interpose, by injunction, to avoid a multiplicity of suits, where there are sundry persons controverting the same right, and each standing upon his own pretensions; but it will not interfere to restrain a person merely because he is guilty of a repetition of the same trespass, provided the case is abundantly susceptible of compensation in damages.

Application to dissolve an injunction. Decided by Judge WARREN, Baker Superior Court, in Chambers, 16th February, 1849.

Celia Hatcher, by a bill filed in the Superior Court of Baker County, alleged, that for thirteen years she had been in the peaceable possession of a lot of land therein described; that James Hampton had commenced suit to recover the possession of this land from her, which action was still pending; that since the

commencement of the action, Hampton, by his overseer and ne-- groes, without authority of law, had entered upon the land, and trespassed upon the same by deadening the growing timber. The bill charged the value of the land to be $800, or some other large sum, and that the deadening of the trees will reduce the value of the land fully one-half; that the tardiness of the proceeding at law, rendered its remedy inadequate, and the complainant doubt- ed whether Hampton would be able to respond in damages, most of his property being held in the name of his wife and children. The bill prayed an injunction, to restrain all trespass or interfer- ence with the land.

By an amendment to this bill, the allegation that the land was worth $800, was stricken out, and it was charged, that the land was of great value, and that the trespass would work an irrepar- able mischief to the complainant, by diminishing the building and rail timbers, and subjecting her and her family to a greater dan- ger from disease arising from the decayed timber, and that the damages must be necessarily speculative and difficult to arrive at.

The answer of the defendant denied the material allegations of the bill; admitted the possession of complainant, but insisted she was a mere " squatter," and had only within a few years set up any claim or title to the land. The defendant insisted he had the only valid title to the land, and denied that the deadening of the timber was an injury. From the view of this case taken by this Court, it is unnecessary to give the contents of the answer more fully.

On the coming in of the answer, the defendant moved to dis- solve the injunction.

The Court below retained the injunction, so as to restrain the defendant from deadening any more timber, but dissolved the injunction restraining the defendant from cultivating the land al- ready cleared.

To which decision complainant, by her counsel, excepted, and has assigned error thereon.

Lyon & Clark, for plaintiff in error.

H. Morgan, for defendant, cited the following authorities :

5 *Ga. Rep.* 576.   1 *Bro. Ch. C.* 58.   6 *Vesey,* 787.   4 *John.*

Hatcher *vs.* Hampton.

*Ch.* 21. *R. M. Charl.* 358. 7 *John. Ch. Rep.* 315. 6 *John. Ch. Rep.* 500.

*By the Court.*—LUMPKIN, J. delivering the opinion.

What is the case made by this bill? Celia Hatcher complains that she had been for thirteen years possessed, in her own right, of lot No. 352, in the first District of Baker County; that James Hampton commenced an action of ejectment against her for the lot, and that subsequently thereto, he entered upon the premises with his overseer and servants, and was deadening the timber thereon with a view to cultivate the same. She farther states, that the injury thus committed will be irreparable, and that it will expose her and her family to sickness; wherefore she prayed an injunction, which was originally granted by the Judge, to future trespasses—the defendant being at liberty, if he thought proper, to use the land already cleared.

[1.] Was this trespass of such a character as to authorize the interdiction of an injunction to restrain it? We think not, looking alone to the charges in the bill. If it is, we can hardly conceive of a case of a mere trespass where the Court would not be entitled to interfere by injunction; and yet all the books concur in holding that, to justify an injunction, there must be something peculiar in the trespass—as, for example, the unauthorized running of a road through the garden of one who lives by gardening; the diverting of water from its usual channel, which propels machinery. Even as it respects this trespass, there might be such a case made, not only in felling shade trees, but in the cutting down of pine timber on land.

[2.] If the bill alleged, for instance, that a saw mill had been erected on the land, or in the vicinity, which rendered this pine timber peculiarly valuable for lumber, I will not say that this would not justify the interposition of a Court of Equity. But no such case is made. It is a mere trespass, and for any thing that appears, abundantly capable of compensation in damages, by ordinary suit at Common Law. Under these circumstances, the Court will not arrest it by the exercise of this extraordinary power.

[3.] But it is said, that Chancery should interpose to avoid a multiplicity of suits; and we concede there are such cases, and that this is a well known principle of Equity jurisprudence. It

Howard and others *vs.* Dill & Co.

is, however, where there are sundry persons controverting the same right, and each standing on his own pretensions, and has no application to persons who are guilty of a repetition of the same trespass, in despite of repeated suits and recoveries against them. It has never been supposed, that because one person chooses daily to pull down the fence of another, and turn his stock in his fields, that this would authorize the Courts of Chancery to restrain the intruder by injunction.

Indeed, the only error which it occurs to us the Court committed, was against the defendant in not dissolving the injunction *in toto*, instead of in part only. For it is not enough, we apprehend, for the complainant to state that she fears sickness. She should have alleged issuable facts, susceptible of trial, and which, at least upon their face, would have made out a presumptive case for relief.

What has been said will sufficiently vindicate the decree of the Circuit Court, and its judgment is consequently affirmed.