12  251
13  402
13  404
13  415
16  315
19  378
12* 505

[No. 858.]

## S. F. THORN, RESPONDENT, v. E. D. SWEENEY ET AL., APPELLANTS.

RIGHT OF EMINENT DOMAIN—PUBLIC USE.—It is within the power of the legislature to pass an act for the condemnation of land for the purpose of bringing water into cities and towns. Such a taking would be for a *public use* within the meaning of that term as used in the constitution.

INJUNCTION IN ACTIONS OF TRESPASS.—The foundation of the jurisdiction in a court of equity to issue an injunction, in aid of the action of trespass, is the probability of irreparable injury; the inadequacy of pecuniary compensation; or the prevention of a multiplicity of suits.

IDEM—PLEADINGS.—IRREPARABLE INJURY.—It is not sufficient that the complaint alleges that the injury would be irreparable. The plaintiff must affirmatively state the necessary facts to show the court that the injury will be irreparable.

IDEM—The construction of a ditch across rocky, barren and uncultivated lands is not an irreparable injury.

IDEM—EASEMENT IN LAND.—An easement in land can only be acquired by the consent or acquiescence of the owner.

IDEM—REMEDY AT LAW.—CONTINUING TRESPASS.—Where no appreciable injury will be done by the acts of defendants, that are threatened to be continued, and the defendants are solvent and able to respond in damages, an injunction will not be granted, although the title of plaintiff is undisputed. To justify the issuance of an injunction there must be cause to fear irreparable damage for which courts of law furnish no adequate remedy.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion of the court.

*T. W. W. Davies*, for Appellant:

I. The injunction should not have been issued, and should have been dissolved on motion: 1. There was no statement of facts necessary to enable the court to say that any irreparable injury had resulted, or would result to plaintiff from any acts of the defendants ; 2. There was no allegation that defendants were unable to discharge and satisfy any judgment that might be obtained against them in the action; 3. The complaint on its face shows that the plaintiff had a plain, speedy and adequate remedy at law, by action of trespass or ejectment; 4. The verified answer denies all the equities of the bill, and upon its coming in, supported as it is by the testimony, the injunction should have been set aside. (Hilliard on Injunctions sec. 37, 104; Id. sec. 74, 45; Id. 318; Id. 572–73.)

An injunction will not be granted to restrain a trespass, unless the trespasser is insolvent, or the injury irreparable and destructive to the plaintiff's estate, to its very nature and substance; and such as calls for immediate relief. There must be something particular or special in the case for which a court of law cannot afford adequate redress. (*N. Y. Printing Co.* v. *Fitch*, 1 Paige, 97; *Cooper* v. *Hamilton*, 8 Blackf. 377; *Cowles* v. *Shaw*, 2 Clarke, 496; *Rankin* v. *Charless*, 19 Mo. 490; *Malvany* v. *Kennedy*, 26 Penn. 44; *Catching* v. *Terrell*, 10 Geo. 576; *Schurmeir* v. *St. Paul, etc.*, 8 Minn. 113; *Whitman* v. *St. Paul etc.*, Id. 116; *Justices* v. *Cosby*, 5 Jones Eq. 254; *Bolster* v. *Catterline* 10 Ind. 117; *Hatcher* v. *Hampton*, 7 Geo. 49; *Justices* v. *The Griffin and West Point P. R. Co.*, 11 Geo. 246; *Stewart* v. *Chew*, 3 Bland. Ch. 440; *Waldron* v. *Marsh*, 5 Cal. 119; *Wells, Fargo & Co.* v. *Dayton*, 11 Nev. 169; *Ritter* v. *Patch*, 12 Cal. 299; *Branch Turnpike Co.* v. *Supervisors of Yuba Co.*, 13 Cal. 190.)

II. The statute of 1866, amended in 1869 (Comp. L. vol. 2, 415), is not in conflict with any provision of the constitution of this state.

III. Land is taken for public use within the meaning of the law of eminent domain, whenever its taking is for the general public advantage.

The conveying of water into a city for general use is in the strictest sense a public use. Water is a prime necessity of life, and a copious supply of the same in any city or town is promotive of the health, comfort and convenience of the inhabitants, as well as enhancing the safety and consequent value of property. (*Hildreth* v. *Lowell*, 11 Gray, 345; *Lumbard* v. *Stearns*, 4 Cush. 60; *Burden* v. *Stein*, 27 Ala. 104; *Reddall* v. *Bryan*, 14 Md. 444; *People* v. *Nearing*, 27 N. Y. 306; *Anderson* v. *Kerns Co.*, 14 Ind. 199; *Miller* v. *Craig*, 3 Stock, N. J. 175; *Dingley* v. *City of Boston*, 100 Mass. 544; *Sessions* v. *Crunkilton*, 20 Ohio St. 349; *Edwards* v. *Stonington Association*, 20 Con. 406; *Pocopson Road*, 16 Penn. St. 15; *Stevens* v. *Walker*, 15 La. An. 577; *Mt. Washington Road*, 35 N. H. 134; *Ash* v. *Cummings*, 50 N. H. 591; *Jordan* v. *Woodward*, 40 Me. 317; *Burges* v. *Clarke*, 13 Ired. 109; *Crenshaw* v. *State River Co.* 6 Rand. 245; *County Court* v. *Griswold*, 58 Mo. 175; *Matter of Cent. Park*, 63 Barb. 282; *Trabue* v. *Macklin*, 4 B. Mon. 407; *Brooklyn Park Com.* v. *Armstrong*, 45 N. Y. 234; *Dayton M. Co.* v. *Seawell*, 11 Nev. 400.)

*Robert M. Clarke*, for Respondent:

I. Defendants acquired no right to or easement in respondent's land by virtue of the proceedings for condemnation: 1. Because they did not secure the compensation awarded as required by the constitution of the state, nor did they keep their tender good as required by the statute. (Art. 1, Cons. Nev., C. L. 416.) 2. The use to which respondent's land is sought to be condemned is not a public but a private use, and it is forbidden by the constitution to take private property for private use. (Sedgwick on Stat. and Const.; Cooley on Const. Limit. 530, 531.) There can be no public use without a public right; 3. The act of the legislature under which the land was attempted to be condemned is unconstitutional and void; (*a*) Because it seeks to take private property for private use; (*b*) Because the method provided by the act "is not due process of law." (Cooley on Const. Limit., pp. 356-7; Sedgwick, S. & C., Const. 537, 538, 539, 610, 611, 612.)

By the Court, HAWLEY, C. J.:

This appeal is from an order refusing to dissolve a temporary injunction. The motion to dissolve is based upon the complaint and answer, and oral testimony submitted at the hearing.

The complaint alleges that plaintiff is the owner in fee of certain land; that the defendants unlawfully entered upon it, dug up and removed the soil, dirt and earth thereon, and excavated and made a ditch for the purpose of conducting water therein, and with the intent and purpose to establish and acquire an easement and servitude in said land, to the injury of said land, to plaintiff's-damage in the sum of five hundred dollars; that defendants are upon said land removing the soil, dirt and earth therefrom, and threaten to continue said acts, and to complete and maintain said ditch, easement and servitude, and to turn water into the same when completed, and to continue to flow water through the same and across the land of the plaintiff perpetually in the future, to the permanent and irreparable injury of the plaintiff and his said land.

The answer admits that the plaintiff is the owner of the land; it denies that defendants, or either of them, unlawfully committed the acts alleged; denies that by their acts "the plaintiff has been, is, or will be damaged irreparably," or that he has been, is, or will be, damaged in any sum whatever.

For further answer, the defendant, M. Rinckel, avers that he is the owner of the Carson water works, with all its privileges, franchises, property and appurtenances, and being so the owner of the same he desired to construct a ditch through plaintiff's land, to be used in connection with said works; that said defendants, being unable to obtain the consent of said plaintiff to construct said ditch, by offering to pay full compensation for said land, and for all injury that might be done thereto, proceeded under the provisions of the act entitled "An act to allow any person, or persons, to divert the waters of any river or stream, and run the same through any ditch or flume, and to provide for the

right of way through the lands of others," (2 Comp. L. 3852 to 3855); that the defendants selected an appraiser, and (the plaintiff refusing to act under said law) this appraiser selected another, and these two selected a third, and the appraisers thus selected assessed the damages at twenty-five dollars, which amount was, by defendants, tendered to plaintiff, and by him refused; that defendants have in all respects complied with the provisions of said law; that the land over which the ditch would run is rocky, barren and of no value whatever; that plaintiff has not and will not suffer any damage whatever by the entry of defendants or by the construction of a covered ditch across his land; that defendants, and each of them, are solvent and able to respond in damages in any sum that plaintiff may recover against them.    The defendant Rinckel further avers that he has been damaged in the sum of one hundred dollars, and that he will be further damaged in the sum of twenty dollars per day for each and every day that he is prevented from completing said ditch by being "deprived of the use of the water in his reservoir for said water works for the supply of persons in Carson city."    It is also alleged that plaintiff has a plain, speedy and adequate remedy at law.

The oral testimony substantiates the material allegations in the answer.

Respondent claims that the act under which the defendants sought to condemn his land is unconstitutional and void for two reasons: "First.  Because it seeks to take private property for private use; Second.  Because the method provided for the condemnation of the land is not by due process of law.    And he therefore contends that, inasmuch as defendants obtained no rights by virtue of said act, and as they admit his title to the land, he is entitled as matter of right to the injunction, because the defendants threaten to continue their unlawful acts, and acquire an easement in said land.

We think the principles decided by this court in *Dayton Gold and Silver Mining Company* v. *Seawell* (11 Nev. 394) are conclusive upon the point that it is within the power of the legislature to pass an act providing for the condemnation

of land for the purpose of bringing water into cities and towns, and that such a taking would be for a "public use" within the meaning of that term as used in the constitution.

The second objection urged by respondent's counsel presents a question of grave importance, which ought not to be decided without mature consideration, and it is one which, from the views we take of this case, it is unnecessary at the present time to decide.

Admitting for the sake of the argument, without deciding the point, that the act is in this respect unconstitutional, does it necessarily follow that the injunction should not be dissolved? We think not. The foundation of the jurisdiction in a court of equity to issue an injunction, in aid of the action of trespass, is the probability of irreparable injury; the inadequacy of pecuniary compensation; or the prevention of a multiplicity of suits where the rights are controverted by numerous persons. In our opinion the facts of this case do not bring the plaintiff within this rule.

It is not sufficient that the complaint alleges that the injury would be irreparable. The plaintiff must affirmatively show how and why it would be so, otherwise the extraordinary remedy by injunction ought not to be allowed. The allegation that defendants will acquire an easement or servitude in the land is answered by the fact that no such easement or servitude could be acquired except by the consent or acquiescence of the plaintiff. (Washburn's Easements and Servitudes, 3 ed., 113, 131, 160.)

The construction of a ditch across the rocky, barren and uncultivated land of plaintiff is not an irreparable injury. (*Waldron & Joiner* v. *Marsh et al.*, 5 Cal. 119.) If any injury is done to the land by the construction of the ditch the defendants are solvent and able to respond in damages, and the plaintiff has a plain and adequate remedy at law.

This brings us to a consideration of the real question at issue, whether the plaintiff is entitled to the injunction as a matter of right, notwithstanding the fact that the injury will be slight and the damages trivial, because the defendants threaten to continue their illegal acts. It is well settled,

that where the title is undisputed, or has been settled by an action at law, and the plaintiff is liable to be irreparably injured by the continued acts of trespass, an injunction should issue. This rule, very properly, prevails in all cases where, as in *Daubenspeck* v. *Grear*, the plaintiff is threatened with injuries which would, if committed, result in the destruction of his property.

In such a case "the fact that the defendants are willing to pay for the property is immaterial, for there are no means of determining whether the value of the property in money would compensate the plaintiffs for its destruction." (18 Cal. 443.) But whilst this rule is universal it does not by any means follow that the same rule prevails as a matter of course, simply because the title is undisputed, where no appreciable injury will be done by the acts that are threatened to be continued. This fact is clearly pointed out in the opinion of the chancellor in *Jerome* v. *Ross*, a leading case upon this subject. "I do not know a case," says the chancellor, "in which an injunction has been granted to restrain a trespasser, merely because he was a trespasser, without showing that the property itself was of peculiar value and could not well admit of due recompense, and would be destroyed by repeated acts of trespass. In ordinary cases the damages to be assessed by a jury will be adequate for a check and for a recompense.

"Every man is undoubtedly entitled to be protected in the possession and enjoyment of his property, though it may be of no intrinsic value. He may have on his land a large mound of useless stone or sand, which he may not deem worth the expense of inclosing, and yet it would be a trespass for any person to remove any portion of the stone or sand without his consent; and he would be entitled to his action, even though the damages were nominal. But would it be proper for this court to assume cognizance of such a trespass and lay the interdict of an injunction upon it? I apprehend not." (7 John's Ch. 334.) In answering the objections as to a multiplicity of suits, the learned chancellor, in the same case, says: "A court of equity will sometimes interfere to prevent a multiplicity of suits, by a

bill of peace. * * * But that is only in cases where the right is controverted by numerous persons, each standing on his own pretensions, and it has no application to the case of one or more persons choosing to persevere in acts of trespass, in despite of suits and recoveries against them. A troublesome man may vex and harass his neighbor, by throwing down his fences and turning cattle upon his grounds, or by passing over them, or otherwise annoying him; but it is to be presumed that repeated recoveries for damages, with the punishment of costs, and such smart money as a jury would naturally give, would soon effectually correct any such disposition. At any rate, I do not know that a court of equity has ever interfered merely to correct such a practice, and it would certainly require very strong evidence of the inefficacy of the ordinary legal remedies for compensation, as well as for correction, before this court would venture to assume a jurisdiction hitherto unknown." (p. 337.) Equally clear and positive is the language of the vice-chancellor in *Wood* v. *Sutcliffe:* "Whenever a court of equity is asked for an injunction in cases of such a nature as this, it must have regard not only to the dry, strict rights of the plaintiff and defendant, but also to the surrounding circumstances; to the rights or interests of other persons, which may be more or less involved; it must, I say, have regard to those circumstances before it exercises its jurisdiction (which is unquestionably a strong one) of granting an injunction. * * * I cannot assent to the proposition that, on the mere dry fact of the plaintiff's having the abstract right, a court of equity will, as a matter of course, on that right being established at law, grant an injunction if the right be infringed ever so minutely." (42 Eng. Ch. 165.)

The rule applicable to the facts of the case under consideration is very fully and correctly stated in a carefully considered opinion, in *Bassett* v. *Salisbury Manufacturing Co.*, where the question was presented to the court whether a judgment in a suit at law establishing the plaintiff's title justified the issuance of an injunction where the trespasses complained of, though slight and trivial, were threatened to be continued. The court say: "The power to grant in-

junctions to prevent injustice has always been regarded as peculiar and extraordinary. It is not controlled by arbitrary and technical rules, but the application for its exercise is addressed to the conscience and sound discretion of the court. Ordinarily it will not be exercised when the right of the complainant is doubtful and has not been settled at law; and even when it has been so settled, an injunction will not be granted when the remedy at law is adequate. It is not enough that an injury merely nominal or theoretical is apprehended, even although an action at law might be maintained for it; but to justify the interposition of this summary power, there must be cause to fear substantial and serious damage, for which courts of law could furnish no adequate remedy. What injuries shall be regarded as irreparable at law must depend upon the circumstances of the particular case. If the injury be trivial, as by * * * raising the water of a river a few inches upon his rocky shore, doing him no appreciable or serious damage, equity would not ordinarily interfere by injunction; even in cases where the right had been established at law, for the power is extraordinary in its character, and is to be exercised in general only in cases of necessity, and when the court can see that other remedies are inadequate to do justice between the parties; and even then it is to be exercised with great care and discretion. If the granting of an injunction would necessarily cause great loss to the defendant, a loss altogether disproportioned to the injury sustained by the plaintiff, that fact should be considered in determining whether the application should be granted, and in some cases it would justly have great weight. It has often been supposed that when the right has been established at law, the plaintiff would be entitled to an injunction as matter of course; and this misapprehension has arisen probably from the fact that in a large number of cases injunctions have been refused upon the express ground that the title of the plaintiff had not been established at law, leaving room for the inference that if it had been so established the injunction would have been issued. This, however, is clearly not the doctrine of courts of

equity, for they will not ordinarily exercise this summary and extraordinary power when substantial justice can be done by courts of law." (47 N. H. 437.)

The doctrine announced in this case is fully supported by the following authorities : *Bigelow* v. *The Hartford Br. Co.*, 14 Conn. 565; *Wason* v. *Sanborn*, 45 N. H. 170; *Blake* v. *City of Brooklyn*, 26 Barb. 301; *Murray* v. *Knapp*, 42 How. Pr. 462; Id. 62 Barb. 566; *Nicodemus* v. *Nicodemus*, 41 Md. 537; *Weigel* v. *Walsh*, 45 Mo. 560; *Herbert* v. *Carslake*, 11 N. J. Eq. 241; *Catching* v. *Terrell*, 10 Ga. 578; *Wooding* v. *Malone*, 30 Ga. 980; High on Inj. secs. 459, 483; Eden on Inj. 231; 2 Story Eq. 925, 928.

It follows from the views above expressed that plaintiff is not entitled to the extraordinary remedy he seeks.

The discretion with which the *nisi prius* judge is clothed in granting or refusing injunctions is a legal, not an arbitrary, discretion. It seems to us quite clear that no restraining order ought to have been issued upon the complaint in this action. It is evident that it ought to have been dissolved upon the motion, and showing made by defendants.

In the consideration of this case, we have treated the defendants as naked trespassers. Their acts, however, were neither wanton nor malicious. It is manifest that their object was not to destroy the substance of plaintiff's estate, or in any manner to injure his property to an extent that could not be fully compensated in damages. They threatened to continue their acts, not for the purpose of destroying plaintiff's property, but with intent to save their own. They acted from beginning to end in apparent good faith, offering in advance to fully compensate plaintiff for any injury that he might receive. This being refused, they proceeded in strict compliance with the provisions of an existing statute that has never been declared unconstitutional by this court. These were proper matters for the court below to have taken into consideration, and would certainly have fully justified it in dissolving the injunction.

If it is finally decided that the law is constitutional, then the plaintiff will be bound by the award of the arbitrators;

otherwise he will be entitled to recover damages for whatever injury, if any, he has sustained by reason of the acts complained of.

The order of the district court refusing to dissolve the injunction is reversed; the injunction is dissolved, and the cause remanded for further proceedings.