## A. V. CARO vs. THE PENSACOLA CITY COMPANY ET. AL.

1. Where the right to the possession of and the title to land is established by an action at law after vexatious and continued litigation a court of equity has jurisdiction to declare the right and to protect it by a perpetual injunction; and threatened irreparable injury is not a necessary element of the equity.

2. Where there is a peculiar state of property in that it is a large tract of land adjoining a growing city and there are a large number of persons claiming possession and title from the same source as against one or more persons claiming title from the same source, equity will interfere in behalf of those in possession to declare the right and will enforce it by a perpetual injunction. This without the prior establishment of the right at law and without proof of threatened irreparable injury.

3. To the extent that there is an actual occupation of land, their possession as a fact whether rightful or wrongful is fixed. Where, however, there is no actual occupancy or such possession as the law determines to be adverse, the law casts the possession with the legal title.

4. Although a temporary injunction may be erroneously awarded upon the bill yet if it is permitted to stand until the hearing, it will then be sustained to the extent equity appears and upon appeal the decree will be affirmed to that extent without regard to the preliminary injunction.

5. A suit cannot be instituted against the agent of a person, the service be perfected upon the agent alone, and a decree be made binding upon the principal.

6. Where the bill and evidence discloses that there are persons, not made parties, claiming rights in the property, they cannot be bound by the decree, no matter what may be the allegations of the bill or the evidence as to the nature of their claims.

7. The presumption is that the grantee in a deed or other conveyance of property had the capacity to acquire property, and where a defendant alleges in his answer as matter of defense that such capacity was wanting, the burden of proof is upon him to show it.

8. While the rule as to making up a transcript of the record requires the Clerk of the Circuit Court not to copy therein any paper as used in evidence upon the hearing unless so noted by the Judge, still, the paper, if so used, becomes *ipso facto* a part of the record, and whereupon *certiorari* such paper is returned to this court endorsed as used in evidence by the Judge, such endorsement being made subsequent to the hearing, the paper will be considered. A violation of such rule cannot result either in an affirmance or reversal of a decree if it appears that the paper was in fact used. The failure of the party offering the paper in evidence to obtain such action by the Judge may be visited by an infliction of costs.

Appeal from the Circuit Court for Escambia county.

The case is thus:

The bill is brought by a corporation known as the Pensacola City Company in behalf of itself and those claiming title under it by purchase and conveyance, some of whom are named, against A. V. Caro, " claiming to be an heir of Gabriel Rivas and agent for other heirs." Plaintiff alleges that about the year 1806 Gabriel Rivas became possessed in fee of a grant from the Spanish Crown of a tract of land in the vicinity of Pensacola known as the Chabeau tract and containing about 300 arpents; that said Rivas about the year 1808 died, seised and possessed of said tract; that after his death upon the petition of his temporary executor, Eugenio Antonio Sierra, the land was sold at public outcry under an order of the Spanish tribunal, and that it was purchased by Gregorio Caro, and that by subsequent *mesne* conveyances the said tract was acquired by the Pensacola City Company, then a joint stock association, under

deed dated the 13th of January, A. D. 1837; that said company entered into possession and laid the land off into lots and has sold a part of said lots to others, some of whom are named as co-plaintiffs; that these persons are still the owners of said lots; that in 1870 the said Pensacola City Company was incorporated and " the said joint stock company, by their trustees, conveyed the said tract of land, together with other tracts of land, except what had been by them sold, to the incorporated company and a map of the property was then made; that said company has sold over 1,000 lots of the land and except so far as it has been conveyed to others the said company have paid all taxes due thereon and that no taxes have been paid by the defendants; that about the year 1872 certain parties claiming to be the heirs of Gabriel Rivas, not being able to find the record of the sale and conveyance of the said tract of land by Gabriel Rivas or his representatives, instituted an action of ejectment against C. M. Hooper, a tenant of the Pensacola City Company; that soon thereafter the record of the sale and conveyance of said land by the executor of Rivas was found among the Spanish Archives in the custody of the keeper of the same; that upon this discovery the attorney who instituted the suit promptly withdrew from the case, but the defendant, A. V. Caro, and others claiming to be the heirs of Rivas, employed an attorney who continued to prosecute the action; that a trial of this action was avoided and continuances from term to term obtained and that when the parties were no longer able to obtain continuances nonsuits were taken and new actions instituted, there having been no less than three actions brought by their agent, the defendant, for the same premises; that there have been two jury trials between the same parties for the same premises, first at the March Term of the United States Circuit Court at Pensacola in 1877, when after the close of the testimony

on the part of the plaintiff and defendant a non-suit was taken by the plaintiff, and on the second trial at March Term of the same court in 1879 the jury found for the defendant and that in both of said trials the title of the heirs of Rivas was fully disclosed and ruled on; that said Caro under his pretended claim has made a large number of sales of certain parcels of said tract and continues to make sales and leases when in his power to do so to the great injury of your orators and those claiming under them, involving the necessity for a great multiplicity of actions to dispossess the parties so put into possession.

Plaintiffs then allege great depreciation in the value of the land by cutting timber and shade trees by the tenants of Caro, and also that a cloud is cast upon the title of plaintiffs by the persistent assertion of title by defendant; that among other acts done upon the premises, defendant and those claiming under him have made a burial ground on the land and have fenced and closed many of the streets laid out through said property by plaintiffs; that in the year 187– plaintiffs instituted an action of ejectment in the Circuit Court of Escambia county against the defendant and others for the recovery of a portion of the tract of land, which action has been continued from term to term to the present time on the application of defendant and against the earnest objections of plaintiffs.

Plaintiffs then allege insolvency of defendant and pray that defendant may be perpetually enjoined from further interference with the said lands, from leasing, selling, renting or enclosing any portion of the same, from putting any more parties in possession of the same, from committing further waste, from collecting rents or purchase money for said lands, or for wood cut on the same, from giving acquittances or discharges for the same, and that defendant be required to pay to plaintiffs all such sums of money as

he has heretofore collected for rents and leases of said lands or from sales of wood and timber.

A temporary injunction corresponding to the perpetual injunction prayed for was granted, the chancellor requiring the complainants to " give bond in the sum of five hundred dollars."

The complainants, the Pensacola City Company, Walter Tate and W. H. Davidson, gave such bond. After appearance by defendant and default, the bill was taken as confessed, and a decree passed making the injunction perpetual. These proceedings were subsequently set aside. A. V. Caro for himself alone filed his answer. He admits the ownership of the tract by Rivas at his death ; denies that any sale under the Spanish tribunal was made, but admits that a sale was had upon the petition of some persons not known and that Gregorio Caro was the highest bidder. He affirms that under the laws of Spain a sale to a minor was void and that Caro was then a minor. He denies that the Pensacola City Company acquired title as alleged in the bill, and states that according to his best information said company never entered into possession of said land. He affirms that he was not aware that said land had been laid off into streets and lots, or that there was a sale by a joint stock company of any lots, and denies that purchasers at the sale alleged entered into possession of the lots alleged to have been sold to them. He alleges that he knows nothing of any act incorporating the Pensacola City Company, or of any conveyance by the trustees of the joint stock company of the land to the said incorporated company or of the change of maps stated in the bill or of the sale of lots mentioned in the bill, and denies that the purchasers of said lots have valid titles to the same. He alleges further that he knows nothing of the alleged payment of taxes by complainant. He admits that " the

Caro heirs instituted an action of ejectment against C. M. Hooper for a small number of arpents on said Rivas tract, and alleges that the attorney he employed to prosecute the suit faithlessly abandoned it, and affirms that neither he nor the other Caro heirs abandoned their claims to the Rivas tract, and denies that they have sought delay in the management of this suit. He admits that he has made a small number of sales of small parcels of land, and that he has made many leases of small parcels of land. He denies that the value of the land has been depreciated by his tenants cutting timber, affirming that they have cut down nothing but bushes and " diminutive trees." He admits that he has used wood growing on said land as fuel for domestic use, and that he has sold small quantities of wood, keeping no account of the sales. He denies that either he or those he has settled upon said tract of land have made a burial ground or cemetery, and alleges that many years before he knew said tract of land persons not known to him used a small portion of it for burying the dead, and that this was done without his consent or knowledge. He then affirms that by the proceedings of complainant and others he " is prohibited from the reasonable use of land of which he has been in possession for nine years under what he verily believes to be a fair and valid title as one of the heirs of Gabriel Rivas."

After replication and testimony upon the part of the plaintiff, the defendant producing no proof, a final decree granting the perpetual injunction was passsed. From this decree this appeal is prosecuted.

The first ground upon which a reversal is sought is because the bill is devoid of equity.

*R. H. Fries* and *J. D. Thompson* for Appellant.

*C. C. & J. E. Yonge* for Appellees.

Mr. Justice Westcott delivered the opinion of the court:

The plaintiff, the Pensacola City Company and their co-plaintiffs to a large number, claiming title to and possession of a tract of land lying near Pensacola, through a common source, such title originating in the early part of this century, seek to enjoin the defendant from interference with their rights of ownership thereto, there having been a trial of the right at law, and judicial proceedings extending over a period of over six years, which resulted in the establishment of the title of the plaintiffs against the defendant, Caro, who is alleged to be insolvent. Caro claims as one of the heirs of Rivas, and the title of Rivas is the common source of plaintiffs' claim. This in this aspect, therefore, is a bill of peace to quiet the right of the plaintiffs which has been established at law after persistent and continued litigation instituted by Caro, who it is alleged is insolvent. Story's Eq. Jur., §354 ; Trustees of Louisville vs. Gray, 1 Litt., 148 ; Trustees of Huntington vs. Nicoll, 1 John. Chy., 166; 3 John., 581, 592. Another object from which arises a distinct equity is to prevent a multiplicity of actions. Caro claims a similar right as against the company and each one of its vendees. All claim through Rivas as the primary source of title, and it would take a large number of actions at law to determine the rights of the parties depending upon the same questions. In Alexander vs. Pendleton, 8 Cranch, 468, Judge Marshall, speaking of a somewhat similar case, says : The situation of the land adjoining a growing city, the number of persons who are consequently interested in the settlement of the question, and the numerous titles which depend on it, give it peculiar claims to the attention of the court. The simple reading of the pleadings here discloses that this is a case surrounded by these " peculiar claims" to a great degree. The case be-

fore Judge Marshall was an application to restrain a person from the assertion of title in the ordinary course of judicial proceedings.    In the case of Nicoll vs. The Trustees, &c., of the Town of Huntington, 1 John. Chy., 166, Chancellor Kent holds " that the peculiar state of property and the oppressive nature of the litigations at law as to the title affords a proper ground for equitable jurisdiction.   And the party may either come into equity first to have his title tried at law under its superintendence, or he may have the title established at law before he comes to this court, and where the title is once established to the satisfaction of the court, either upon its own view of the testimony or by verdict on one or more issues awarded at its discretion, it will declare in whom the right exists by a decree, and protect that right by a perpetual injunction.   Now the bill here alleges that a suit was instituted by defendant against one of its tenants in 1872 when a link in its chain of title was missing ; that it was subsequently supplied ; that defendant avoided a trial, obtaining continuances from term to term upon various pretexts, and when no longer able to procure continuances, taking non-suits and instituting new actions, there having been no less than three actions brought for the same premises; that there have been two jury trials between the same parties for the same premises, the first in March Term, 1877, when after the close of the testimony a non-suit was taken by the plaintiff; the second at the March Term, 1879, at which the jury found for the defendant, and that in both of these trials the title of the heirs of Rivas was fully disclosed and ruled on.   Plaintiffs allege also that notwithstanding the trial of the title and these proceedings the defendant continues to make leases and sales of portions of the Rivas tract which it and its vendees own, and that defendant and his tenants are cutting down shade trees and timber.

Now these circumstances, coupled with the peculiar situation of the property as to ownership and locality, certainly should call into active exercise the protective and conservative powers of a court of equity. As to the matter of cloud upon title we perceive none to remove. Caro is alleged to persistently deny it, but slander of title is not a cloud upon it, and cannot be enjoined as such. Davidson vs. Seegar, 15 Fla., 679.

The next matter alleged as a ground for a reversal of the decree by the appellant which we examine is because the bill is not sustained by legal evidence.

It is objected that the Chancellor did not endorse on certain papers the fact that they were read in evidence at the hearing of the case. Rule 94 Chancery Rules in directing the clerk as to the manner of making up a record of a decree appealed from requires that he shall not copy into the record any paper as used in evidence upon the hearing unless the same shall have been noted by the Judge as read or rejected in evidence. In this case the Judge omitted to so note some of the papers used in evidence, and the clerk very properly for this reason omitted to insert them. At the instance of the respondent a *certiorari* was awarded and these papers were brought to this court. Upon them now appears an endorsement of the Judge to the effect that they were read in evidence, but he neglected to note the fact at the time. The failure to make such note did not cause the papers to cease to be a part of the record. If they were used or rejected at the hearing they became *ipso facto* a part of the record. It is the fact of use upon the hearing, not noting, that makes them a part of the record, and while the clerk may very properly omit them when not noted this court will, upon *certiorari*, bring them up for inspection, and if it is satisfied that they were read or rejected will decide the case in that view, and the subsequent cer-

tificate or statement of the Judge that they were used will be accepted as sufficient evidence of that fact. The rule itself prescribes no such penalty for the failure of the Judge to make such note, and when the truth can be ascertained such failure cannot be permitted to operate to the prejudice of either party, appellant or respondent, to such extent as to justify either an affirmance or reversal. Some penalty by the infliction of costs or other method may be visited, if deemed proper, upon the party neglecting to procure at the hands of the Judge the action required, but nothing more.

It is further objected that plaintiff's title is not sustained by the evidence. We do not propose to go into a detailed statement of the many conveyances and their contents embraced in the evidence. The chain of title from the sale of 300 arpents of land by those representing the estate of Gabriel Rivas to Gregorio Caro, from him to Fitzsimmons Smyth and Chabeau, and from them through their vendees by sales under execution and direct conveyances, is complete. The title is traced to Gregory and Chase through these sales, and from them it is traced through the joint stock association to its vendees and to the Pensacola City Company and its vendees.

In reply to this evidence of title defendant introduces no proof. In his answer he affirms that under the Spanish law controlling the transfer of rights to land a minor could not acquire land, and that Gregorio Caro was a minor. Whatever effect such facts might have had upon the title he has failed to prove anything in this connection. The conveyance and proceedings under which the title passed not disclosing minority it devolved upon him to prove it as matter of defence, besides the testimony here of a witness who knew Caro, is to the effect that he was about twenty-five years of age when he made the purchase, and

while this may not be the highest evidence of a man's age still it was not objected to, and in the absence of any exception and of better evidence it could have been properly acted upon if necessary.

The title of plaintiff, the Pensacola City Company, its vendee, and the vendees of the joint stock association, is established against Caro, so far as the paper title is concerned, by this testimony, and the suit at law established the title to the tract not to be in Caro, as it appears from the pleadings and proofs that this matter was involved in the issue.

The defendant alleges that he has been in possession of some of this land for nine years. This is matter of defence. He has offered not a particle of proof of it, and it devolved upon him to do so if his possession was of such character as to bar the action of plaintiff. Wade vs. Doyle, 17 Fla., 528. That he was an heir of Rivas even is not established by any proof, and if it was admitted the evidence here shows that the title had passed from the estate of Rivas, and defendant was required to show a title as against those deriving title from that source. The plaintiffs have placed in this record evidence of legal title, the defendant has shown none. On the contrary, the legal title he claims is shown not to exist in him. To the extent that there is an actual occupation there as a matter of course possession as a fact, whether rightful or wrongful, is fixed. Where, however, there is no actual occupancy or such possession as the law determines to be adverse the law casts the possession with the legal title, (Hogans vs. Carruth, 19 Fla.) and where there is actual possession, whether it is rightful or wrongful and of such character as bars the remedy of the party having the prior title, depends upon its duration and character. In this case the legal title having been shown to be in the plaintiffs they have the possession as against all con-

cerned in this suit except those who are in actual possession or occupancy, or whose possession has ripened into a legal title by virtue of the fact that its character and duration constitute it a bar to the plaintiffs' right of action and those in adverse possession.

The bill and evidence discloses here that there are persons other than Caro who claim interests in the property. They are alleged to be vendees and lessees of the heirs of Rivas but they are not parties, are not named and may claim independent ownerships. They are not controlled by this decree except so far as they may be affected through its operation upon Caro by prohibiting him from collecting rents, &c.

As to the rights and remedies, equitable or legal, of the plaintiffs against these persons we say nothing except that they are not directly bound by this decree. Nor do we see how the rights of the heirs of Rivas other than the present defendant can be affected by this proceeding to which they are not parties, and in which not even their names appear. A suit cannot be instituted against the agent of a party, the service perfected upon the agent alone, and a decree made binding upon the principal.

To this extent the final decree here should be modified.

The appellant objects to the granting of the temporary injunction because no bond was given and because the particular title of plaintiffs was not set up in the bill or its exhibits. It is too late now to raise these questions. Where the appeal is taken from the final decree awarding a perpetual injunction upon the merits and that decree is sustained, any error in granting the interlocutory injunction of the character named is not good ground for a reversal of the final decree. To the extent that it is sustained by what was before the Circuit Court at the hearing, it must be affirmed here. The rule is that although the writ may

have been improperly granted in the first instance, yet if it is permitted to stand until the hearing it will then be continued to the extent equity appears.

The other grounds upon which a reversal of the decree is here sought, are that " it is not proved that irreparable injury will result nor how a multiplicity of suits can arise." This is not a bill to restrain a simple trespass or other act where threatened irreparable injury is necessary to equitable interference.

As to the matter of the multiplicity of suits it sufficiently appears that there are a large number of persons having a common right against one claiming a like right against them and other circumstances which we need not again mention. What we have before said in this aspect of the case it is unnecessary to repeat here.

To the extent that the final decree purports to affect the rights of the heirs of Rivas other than Caro, the defendant, it is reversed. It all other respects it is affirmed. The costs of the *certiorari* and the the copying of the papers attending it will be taxed against the respondents in this court, and all other costs will be equally divided between the parties.