## WILLIAM M. CARNEY, ET AL., APPELLANTS, VS. JESSE HADLEY, ET AL., APPELLEES.

1. As a general rule two conditions must concur to give a court of equity jurisdiction to enjoin a mere trespass on property : First, the complainant's title must be admitted, or legally established ; and, second, the trespass must be of such a nature as to cause irreparable damage, not susceptible of complete pecuniary compensation. The inadequacy of the legal remedy is the foundation and indispensable prerequisite for the interposition of chancery in such cases, for the reason that a legal remedy has been devised to redress such wrongs, and so long as this remedy is adequate, equity has no right to interfere.

2. The practice of granting injunctions in cases of trespass, it seems, is more liberal now than it was formerly, but a clear case of the inadequacy of the legal remedy must still be shown in order to justify the interference of the court of chancery.

3. While insolvency alone of the defendant may not be sufficient to authorize an injunction, yet it is an important element in many cases in determining whether or not a court of chancery should act in granting injunctions.

4. In cases of repeated trespasses where it becomes necessary to quiet a rightful, admitted or established possession, chancery has often interposed to prevent a multiplicity of suits, although

there may be a remedy at law. This court will not, however, grant an injunction against one person merely because he is guilty of repeated trespasses, where the legal remedy affords an adequate and complete redress in damages. The rule seemingly well sustained by authority is that before a court of chancery will interfere to prevent a multiplicity of suits, there must be several persons controverting the same right, and each standing upon his own pretension of right.

5. Whenever the complainant's title is disputed in cases of trespass, a court of equity will not interfere by injunction on the ground of a multiplicity of suits until he has successfully established his title by trial at law.

6. Where the alleged trespass or threatened injury is to trees standing on land, in order to justify the granting of an injunction by a court of equity, it must appear that the trees are of such peculiar value and importance to the estate as that the alleged injury to them will so affect the uses and purposes for which the estate was designed as to make the injury to them an irreparable loss to the owner. An allegation that the trees are valueless except for turpentine and timber, and without them in a condition to produce turpentine and timber, the land would be of little value, and that the acts of defendants in extracting turpentine from the trees greatly lessens their value as timber producing trees. does not show that the injury complained of amounts to a destruction of the estate, or that the injury done could not be adequately compensated in damages. This was the rule prior to the enactment of section 1469, Revised Statutes.

Appeal from the Circuit Court for Escambia county.

STATEMENT.

This is a bill for an injunction filed by appellees against appellants. The bill alleged that complainants were the owners in fee of a certain tract of land situated in Escambia county, Florida, consisting of six hundred and forty acres, described by metes and bounds, and known as the Benjamin Hadley, or Richland Pond, tract, and that they and Benjamin Hadley, under whom they claim title as heirs, had been in pos-

session of this land with interruptions for more than sixty years, and were then in possession; that said land was very thickly studded with pitch pine trees of large size and of great value, and that defendant Carney and his foremen Gilchrist and Carmichael have from time to time, during two years prior to filing the bill, trespassed upon the said land for the purpose of boxing the trees, and thereby producing turpentine which they have removed from said trees and from said land; that not only does the removal of the turpentine from said trees and land deprive complainants of the said turpentine and the value thereof, but its extraction from said trees greatly lessens the value of the same as timber producing trees, and except for the purpose of the production of turpentine and timber said trees are valueless; that said trees constitute in large part the value of said land, and without them in a condition to be made valuable for turpentine and timber the said land is of little value; that the trespasses of respondents are continuous and frequent, and they threaten not only to trespass in the future upon said land for the purpose of removing turpentine already collected in boxes on the trees, but from time to time to trespass for the purpose of boxing and rescraping said trees; and that said respondents reside in the state of Alabama and are possessed of no property of any kind in the State of Florida, and unless they are restrained from their said repeated and innumerable trespasses, complainants are remediless, save by repeated, vexatious and multiplied suits against respondents, which would be fruitless in the State of Florida because of their alleged want of property in this State. The bill prays among other things for an order restraining appellants from trespassing upon the said land for the purpose of boxing or scraping or other-

wise injuring the trees upon said land, and from removing the turpentine already in the boxes on the same.

The injunction as prayed for was granted, and respondents answered the bill. The answer denies the allegation that complainants were the owners of the said tract of land, or any part of it, or that they or any of them were then in possession of the same, or have at any time been in possession except for a few days during the month of March, 1888, when they or their agents went upon a portion of said land, but were notified that they were trespassers by Carney, one of the respondents, or his agent, and they shortly thereafter left said premises and have not since made any effort to take possession of same; that said land was deeded December 18th, 1820, by Benjamin Hadley, the ancestor through whom complainants claim title, for valuable consideration to one William Denman, and the same has never been reconveyed to said Hadley or his heirs ; that said land belongs to and is the property of William M. Carney, one of the respondents, and that he is in possession of same as owner and adversely to all others, and has been so in possession since the 31st day of August, 1882, when the same was deeded to him by John D. Reilly for valuable consideration, and said deed was duly recorded on the 16th day of February, 1883. Further, that when said Reilly executed said deed he was in actual possession of said land as owner thereof under a deed conveying same to him by James J. Milstead, bearing date March 27th, 1852, and that he (Reilly) had been in possession of the said land since the date of said deed; that said Milstead at the time of making said deed to Reilly was in possession of said land under chain of title from

said William Denman, to whom Benjamin Hadley had conveyed.

The allegation that respondents were without property in the State of Florida is denied, and it is averred that Carney, one of them, owns about six thousand acres of land in Escambia county, Florida, and further, that a suit for damages alleged to have been sustained by complainants by reason of the alleged trespasses on the part of respondents was then pending between said parties in Escambia county, Alabama. It is also alleged that the matters contained in complainant's bill are determinable at law, and do not constitute any ground for relief in a court of equity, and pray the same advantage by their answer as if they had demurred to said bill.

Respondents moved to dissolve the injunction because the material allegations of the bill had been denied, and at a subsequent date moved to dissolve the injunction and dismiss the bill for want of jurisdiction in the court appearing upon the face of the record. The motions to dissolve were refused and the case proceeded regularly to final hearing, when upon the pleadings and proofs a final decree was rendered adjudging complainants to be the owners of the land in question, and that the respondents and their agents and attorneys be perpetually enjoined from going upon said land to box or scrape the pine trees thereon or to remove any turpentine therefrom, and from committing any acts of trespass on the land. Respondents appealed.

*Mallory & Maxwell* for Appellants.

No appearance for Appellees.

MABRY, J. :

According to the allegations of the bill before us, the acts, against the doing of which an injunction was sought and obtained, amounted to a trespass upon real estate. This trespass, according to the bill, consisted in entering upon the land of complainants, boxing the pine trees standing thereon for the production of turpentine and the removal of the turpentine from the trees and the land. The case arose and was determined in the Circuit Court before the enactment of Chapter 3884, laws of 1889, and must be disposed of independently of the provisions of that act.

Courts of equity do not ordinarily extend the harsh remedy of injunction to cases of trespass, but leave the redress of such grievances to the courts of law, where originally jurisdiction in such matters was lodged. It is said that originally courts of equity did not grant injunctions to restrain trespasses in any case, but whether in analogy to the remedy to prevent waste, or to prevent injuries supposed not to be adequately recompensed by damages in the legal forum, it is now firmly settled that injunctions will be granted to restrain trespasses under certain conditions. The inadequacy of the legal remedy is the foundation and indispensable prerequisite for the interposition of chancery in such matters, for the obvious reason that a legal remedy has been devised to redress such wrongs, and so long as the law provides an adequate remedy, equity has no right to interfere. The general rule, as has often been stated, is that in order to give the court of equity jurisdiction to enjoin torts to property, two conditions must concur:

First. The complainant's title must be admitted, or be established by a legal adjudication; and, second,

the threatened injury must be of such a nature as will cause irreparable damage, not susceptible of complete pecuniary compensation. The courts have generally accepted the statement of the rule here given as correct, although they have encountered considerable difficulty in its application to the facts of the various cases that have arisen out of the complication of human transactions. Jerome vs. Ross, 7 Johnson's Ch., 315; Gause vs. Perkins, 3 Jones' Eq., 177; McMillan vs. Ferrell, 7 W. Va., 223; Citizen's Coach Co. vs. Camden Horse R. R. Co., 29 N. J. Eq., 299; Echelkamp vs. Schrader, 45 Mo., 505; Hamilton vs. Ely, 4 Gill, 34; Catching vs. Terrell, 16 Ga., 576; Mayor, etc., of Frederick vs. Groshen, 30 Md., 436; Indian River Steamboat Co. vs. East Coast Transportation Co., 28 Fla., 387, 10 South. Rep., 480. To authorize the issuance of the writ of injunction by a court of chancery the injury threatened must be of such a peculiar nature that compensation in money can not atone for it. The view expressed by Chancellor Kent is, that "it must be a strong and peculiar case of trespass, going to the destruction of the inheritance, or where the mischief is remediless, to entitle the party to the interference of this court by injunction." Jerome vs. Ross, *supra.* In one case of cutting timber where the petition alleged that the defendants were continuing the trespass with a view to carrying away the timber, and that they intended, if not restrained, to take and carry away the timber (converted into cord wood) from the premises, and so dispose of it as to put it beyond the reach of petitioners, the court in holding this not to be sufficient, said: "We do not say that there may not be cases where the legal remedy would be incomplete, and in which an injunction might properly issue. For instance, as above suggested, the defendants might be

entirely insolvent; the trespass might grow into a nuisance or waste; numberless suits might have to be brought, in order to make the remedy complete; the trespass might be by a party occupying a fiduciary relation; or the injury of such a character that the loss would be irreparable, and not be compensated in dollars and cents; and in any such, or similar cases, an injunction might be proper.'' Cowles vs. Shaw, 2 Iowa, 496. It is apparent that quite a field for the exercise of chancery powers is here opened up, and many cases show that this court has extended its jurisdiction in the directions indicated. It is said that a more liberal practice prevails now in granting injunctions than obtained formerly. But the rule seems to have been adhered to, however, in the cases, that a clear case of the inadequacy of the legal remedy must be shown in order to justify the interposition of the court of chancery by the harsh remedy of injunction.

The trespasses alleged in the bill under consideration consist in entering the land of complainants and boxing trees for the production of turpentine. These trespasses are alleged to be continuous and frequent, and that the defendants reside in the state of Alabama and have no property in this State; also, unless the said defendants be restrained from their repeated and innumerable trespasses, complainants were remediless save by repeated, vexatious and multiplied suits which would be fruitless in this State, because of the alleged want of property in this jurisdiction by the respondents. The answer positively denies the allegation in the bill that respondents were not possessed of any property in this State, and it is alleged that Carney, who is the only person asserting any claim to the land, owns at least six thousand acres in Escambia county, Florida. It seems that a suit for damages in reference

to the subject-matter of this proceeding and between the same parties, is pending in Escambia county, Alabama. No effort was made on the part of appellees to establish the allegation that appellants were not possessed of any property in Florida, but the showing made by the latter is clear that Carney at the time of filing the bill was possessed of considerable real property situated in Escambia county, Florida, amounting to at least six thousand acres. Insolvency is an element in determining whether or not the court should act in granting an injunction in a case. In Gause vs. Perkins, *supra*, it is said that the "injury must be of a peculiar nature, so that compensation in money can not atone for it; where from its nature it may be thus atoned for, if in the particular case the party be insolvent, and on that account unable to atone for it, it will be considered irreparable." And in many of the cases where injunctions have been granted to restrain trespasses the insolvency of the trespasser has been an important element. Our court has said that insolvency alone of the defendant will not be sufficient to authorize an injunction. Pensacola & Georgia R. R. Co. vs. Spratt & Callahan, 12 Fla., 26. Under the proof in the record before us insolvency cannot be claimed in support of the decree. The showing is that one of the respondents, and who is the real party in interest in the subject-matter of this suit, owns considerable property within the jurisdiction of the court, and liable to any judgment for damages that may be recovered against him.

In cases of repeated trespasses where it is necessary to quiet a rightful, admitted or established possession, chancery has often interposed to prevent a multiplicity of suits, although there may be a remedy at law, and this is a well recognized head of chancery jurisdiction

when a proper case is presented.   The court will not, however, grant an injunction against one person merely because he is guilty of repeated trespasses where the legal remedy affords an adequate and complete redress in damages.   The rule, as stated by many decisions, is, that to justify the interference of a court of equity in cases of trespass in order to avoid a multiplicity of suits, there must be several persons controverting the same right, and each standing upon his own claim or pretension.   Jerome vs. Ross, *supra*; Hatcher vs Hampton, 7 Ga., 49; Nicodemus vs. Nicodemus, 41 Md., 529; Thorn vs. Sweeney, 12 Nev., 251; Roebling vs. First National Bank, 30 Fed. Rep., 744; High on Injunctions, sec. 700.

The bill is filed against Carney and two others alleged to be his foremen.   Carney is the only person who is making any claim to the land as against appellees, and is the sole moving agency in the alleged invasion of their rights.   The other persons named are simply agents and servants, and they do not assert any claim to the land.   What they do is for Carney and in his name, and the controversy in reference to the land is solely between appellees and appellant Carney.   According to the rule just stated, there would be no occasion for the interference of chancery on account of the multiplicity of suits between the parties.   But in addition to the rule mentioned, it seems to be clearly settled that whenever the complainant's title is disputed a court of equity will not interfere by injunction, or make perpetual an injunction already granted, on the ground of a multiplicity of suits, until he has procured his title to be established by a successful trial at law. The ground upon which this action is based is because as a general thing courts of equity do not try disputed

legal titles to land.   1  Pomeroy's Eq.  Jur., sec. 252;
Poyer vs.  Village of Des Plaines, 123 Ill., 111; Carlisle
vs.  Cooper, 21 N. J. Eq., 576; Irwin vs.  Davidson, 3
Ired. Eq. 311; Caro vs. Pensacola City Co., 19 Fla., 766.
The answer shows that the title of  appellees was dis-
puted, and an examination of the testimony in the rec-
ord does not dispel the presence of a  serious issue  be-
tween the parties as to  the  legal  title  to the land in
question.   In any view we  take of  the  case  there is
nothing to help the final decree in favor of appellees on
the ground of the right of  the court to interfere on ac-
count of a multiplicity of suits.

But can the decree in favor of appellees  making the
injunction perpetual be  supported  on the ground that
appellants were committing an irreparable injury with-
in the meaning of the rule already stated?   It  is  safe
to say that even in cases of the destruction  of  timber
by cutting and removing it from the land, it is not suf-
ficient in order to obtain an  injunction  to  simply  al-
lege that  such cutting and removal amount to irrepar-
able injury to the land, and a great damage and loss to
the owner.   In addition, it must appear  that the trees
are of such peculiar value and importance to the estate
as that  their destruction  or  injury will  so affect the
uses and purposes for which it is designed as  to make
their loss an irreparable injury to the  owner.   If ade-
quate compensation can be  made  in  money, the rem-
edy is at law.   In Green vs. Keen, 4 Md., 98, the alle-
gation as to the  trespass was, in substance, that  the
defendant had entered upon  the premises mentioned
and had felled timber trees and other trees  standing
upon the land, and committed other and further waste
thereon by driving wagons and other vehicles over  the
same. and had threatened to fell other timber trees  on
the land to its irreparable injury and to the great dam-

age and loss of complainant. This was held not suffi-
cient to authorize an injunction.

It was alleged in Shipley vs. Ritter, 7 Md., 408, that
complainant's home, consisting of two hundred and
forty acres, had on a part of it timber consisting of oak,
chestnut, hickory and other growth common to the
country, and that it was "particularly valuable and
desirable to complainant as timber land, so much so
that it would be and is attended with irreparable in-
jury for the same to be cut down and destroyed, or
converted into pasture or waste land; that a por-
tion of said timber land, and the portion which is in
part the subject of the waste and destruction hereinaf-
ter complained of, is so situated in reference to com-
plainant's house and outbuildings that it affords them
protection and shelter from the severity of the seasons
of summer and winter, besides being ornamental, and
that on these accounts also the waste and destruction
hereinafter set forth and complained of is attended
with and is an irreparable injury to complainant." The
trespass of entering upon and destroying the timber
by defendants was also alleged. The same court held
this bill to be sufficient for an injunction. The princi-
ple applied here is this—the trespass complained of
went to the destruction of that which was essential to
the value of the estate, and to the destruction of the
estate itself, in the character in which it had been en-
joyed. When such an injury is inflicted it is irrepar-
able, in the meaning of the rule, and can not be com-
pensated by the legal remedy, and hence a court of
chancery, ever ready to prevent an injustice, steps for-
ward with its restraining power to prevent the threat-
ened injury. The character of the injury as being
capable of compensation, or such as is irreparable in its
nature, is the distinguishing feature in determining the

jurisdiction of chancery in such cases. West vs. Walker, 3 N. J. Eq. (2 Green), 279; Thompson vs. Williams 1 Jones' Eq., 176; Powell vs. Rawlings, 38 Md., 239; Thatcher vs. Humble, 67 Ind., 444; Hatcher vs. Hampton, *supra;* Thomas vs. James, 32 Ala., 723; Hillman vs. Hurley, 82 Ky., 626.

The averments of the bill in Gause vs. Perkins, to which reference has already been made, were that most of the land was fit for little else than the production of turpentine, staves and timber, and that defendant had entered upon the land by his agents and servants and boxed some twenty-five thousand trees for producing turpentine, and had carried on the business of making turpentine on this land and carrying it off and selling the same in large quantities. Further, that he was overworking the trees, and in a few years they would be worn out, useless and unfit for making turpentine, and defendant was at the time of filing the bill engaged in committing other wastes, spoil and destruction upon the land, and was thus doing an irreparable injury to the land and would render the same utterly useless and valueless unless he was restrained by injunction. The court decided in this case that the boxing of pine trees for turpentine, and working them for such purpose, was not destruction, and that the court could not see that the injury would be irreparable unless it was shown that the defendant was insolvent, and, on that account, unable to atone for any injury that he might do the complainant. In another case, Bell vs. Chadwick, 71 N. C., 329, where an injunction against working pine trees for turpentine was sought, the court says: "It should be a very clear case of trespass, and irreparable mischief, to justify a court in crippling the industry of the country and preventing the full development of our resources." As was said

in a still later case, McCormick vs. Nixon, 83 N. C., 113, the decisions in that state were placed upon the ground of justice to the party sought to be enjoined, and in obedience to public policy, which favors the use to which lands are adapted as means of developing the resources of the country.

We have been unable to find any case holding that the simple working of pine trees for turpentine in the customary manner was irreparable injury, to prevent which a court of equity would grant an injunction. In Stevens vs. Beekman, 1 Johnson's Ch., 317, the allegation, in effect, was that defendant had entered the premises, cut down and taken away timber, and that the part of the land on which such waste was committed, was principally, if not exclusively, valuable on account of the timber. This was held insufficient to sustain the injunction. So far as the loss of the turpentine is concerned, or damage to the trees in the production of turpentine, the bill entirely fails to exhibit a case of irreparable injury. It is made to appear that the trees are valueless except for turpentine and timber, and without them in a condition to produce turpentine and timber the land would be of little value; also that appellees were being deprived of the turpentine by reason of the acts of appellants. It does not appear from this that the working of the trees for turpentine will be a destruction of them, nor does it appear that the alleged injury is of such a nature as that it can not be fully compensated in damages. There is an allegation in connection with the above, that the extraction of the turpentine from the trees greatly lessens their value as timber producing trees, but here again there is an absence of any clear showing that the injury resulting from this source amounts to a destruction of the estate, or is such as can not be fully atoned

for in money, and that a recovery for the damage done to the trees as timber in working them for turpentine would not be full and adequate for all the injury sustained. There is no special allegation of damage showing that pecuniary compensation will not compensate for all the loss.

The court we think was in error in not dissolving the injunction on final hearing, without reference to the question of appellee's title. The answer denied the title and possession of appellees, and on the proof it is contended by appellants that the court should have refused relief on the ground of want of title in appellees. What we have said disposes of the case, and we need not discuss the question of title.

The decree of the court should be reversed, and it is so ordered.